and we have Jordan Cohen for the State Appellate Defender and we have Sharon Shanahan for the State Prosecutor. You may proceed. My name is Jordan Cohen. I represent James Dowdy. James Dowdy was convicted of burglary after he stole socks out of an unlocked car. He pleaded guilty. Yes, I'm sorry. He pled guilty but mentally ill. Yes. And the issue of this case is with sentencing, is whether his sentence violated the proportion of penalties clause because he was given 14 years for stealing some socks. Now I'm going to start with some background about Mr. Dowdy because this is a bit of an unusual case, I think. So Mr. Dowdy has been diagnosed with autism, obsessive compulsive disorder and fetish disorder. And according to Dr. Cuneo, this is a rare combination to have these things working together. And this results in... Does he also have any abnormalities in his IQ or? Not significantly, Your Honor. I mean, he was not... I would say no, Your Honor. I think he's below... Yeah, I thought I saw something. He was in special ed. Yes, well, I throw him up. He did have struggles. I'm sorry, I'm comparing this to a case I had yesterday when it was much lower. It was lower than average. Yes, normal. Yes, I would say that. I'm sorry, Your Honor. And so he has this... Because of all these things, he has this obsession and this fixation on socks that occupies thoughts all the time. And one thing I want to clarify before we go any further, just because I did mention a fetish disorder, is that it's not actually sexual. So he's never even been suggested... Suspected of having any type of sex crime. So there's never been any suspicion of him for that. It's only the socks. So it's not even the person. It's not even the foot. It's only the sock. So Dr. Crumio explains that Mr. Dowdy has this anxiety cycle where when he feels anxious, he's got to get his hands on socks. And when he has these socks, he gets this release of anxiety, and it kind of creates this loop and this cycle that he does. And the way Dr. Crumio describes it, it's almost like an addiction, and that socks are kind of a drug, that he needs this to relieve anxiety for him. Now, there's a lot more details about this at the sentencing hearing, where this really gets fleshed out and shows where this came from, how it's affected him throughout his life. I'm not going to go into all those details, because it would probably take a long time. It's all on the record. Yes. Take it. So I'm going to fast forward here and show that Mr. Dowdy, he has shown, he's expressed guilt and shame regarding this, and he has expressed remorse at every stage, ever since the moment he was arrested, because even the detectives who arrested him, I'm not talking about a character witness. I'm talking about the detectives who arrested and investigated and questioned him. Even they had nothing but good things to say about Mr. Dowdy, that he was respectful, he was forthcoming, he was cooperative, he was truthful, he was nice, and that he would just tell them everything right away. I want to kind of jump ahead, because we may run out of time, and I've got kind of a fundamental question, I think, is that it appears that the judge did not feel that he really had a whole lot of discretion in sentencing him within the guidelines. Yes, Your Honor. How do you respond to that? I would agree. You would agree that he didn't feel that. Yes, I would agree that the judge felt that way. Okay, and then I would like you to tell me what you believe that his options were, and I know that that's kind of the meat here, and you may run out of time, and I really would like to know what you believe. Yes. So, there's a lot of quotes about why the judge said that, so I'll do with that. And as far as his options, there were two cases that I was planning on bringing up to show basically options of what you can do. So, first, there was Peeble v. Busse, which carved out what they called a petty offense exception. In Peeble v. Busse, the defendant stole $44 worth of quarters from a vending machine, and there was no, and he did this many times, but there was no physical harm, there was no escalation of his crimes over time, and the court actually called his criminal history boringly repetitive, and they even determined that prison is not going to rehabilitate this person. He's going to keep doing it, so why are we punishing someone 12 years for stealing quarters? And his sentence was reduced from 12 to 6 years. So, that's the petty offense exception. The state would take issue with that, or they did take issue with that in his brief, and they say the dissent in Busse basically arguing that it's up to the legislature to enact the laws. As long as it's within the range, then it wouldn't be disturbed. Of course, I would also point out that the dissent in Busse, the main reason for the dissent, was actually because the defendant didn't show any remorse. Whereas here, Mr. Dowdy has shown remorse. He sought out counseling on his own and tried to fix his behavior. But moving on, this idea that it's up to the legislature to enact the laws, this is where my argument is that it was the legislature that enacted the proportion of penalties clause. And that can be a fail-safe that can give this court the authority to reduce a sentence if it is in violation of the proportion of penalties clause. And so, I also wanted to point to another mental illness case, which is People v. Waters. And I'm going to say right off the bat that it's not exactly the same, because Waters was a trial with special provisions. So it had different, it had 104.22 that applied to it, I believe. But in Waters, the reason I'm bringing it up is because the reasoning that was used to reduce that sentence could exactly be used for this. So People v. Waters was a horrific sex crime. It was chronic sexual abuse of a four-year-old girl. And it actually had the same clause from Dr. Cuneo, who basically said, look, prison isn't going to help this person, but they could get treatment. And so that, even for that horrific crime, that People v. Waters only had a six-year sentence, which is the minimum, and that case actually got remanded to give the trial court the option to go even below the minimum or even to probation, even though this offense is far worse than, obviously, what Mr. Doughty did of stealing socks. So I just want to point out that the trial court does have the ability, I think it's certainly rare that you would go below the minimum of plastic sentencing, but in extraordinary circumstances, especially with mental illness, I would argue the trial court does have that discretion to do that. However, here today, that's not what I'm asking for because enough time has passed that at this point the appropriate remedy would just be to reduce to the minimum of six years, not any below. Now, why is it you're asking us to reduce rather than not sentence him? I'm trying to understand that. Just because of the amount of time he's already served. So if he's already been in prison for three years, and so if it was reduced to six, he would be very close to eligible for release already. I mean, if I was, I wish that the trial court had the option of parole because Dr. Cuneo laid out a very simple three-step plan of how Mr. Doughty could be treated. He just said he needs medication and he needs a combination of individual treatment and a structured plan, and this could minimize his risk of reoffending. So if there was some type of parole where it could be conditioned on that, or even if it was almost similar to a drug court, I think that would have been the perfect option. Unfortunately, the trial court here even said that I've done all I can, and he said what ought to happen is we should send him to a place where he gets treated, but that can't happen. It was pretty clear, and I don't know that the state's going to dispute, that the court didn't think he really had any other alternative. Yes, Your Honor. And that's from the court that said, you know, what ought to happen is we ought to have a secure facility that Mr. Doughty could be cared for and treated for, and the court also said I have no confidence the DOC will provide him with treatment. I'm pessimistic, and he said what ought to happen can't happen, and I've done all I can do. So in my opinion, the court did not even want to send him to prison at all, but felt that he did not have a choice. And the one thing, the other thing that Dr. Klingler testified is just about how prison is really going to be harmful for Mr. Doughty and how mostly that when he gets out of prison, he's going to have the same diagnosis, and he's likely to reoffend again if he does not get treatment. So the longer he's in prison, it's doing harm to him, and it's going against the stated purpose of the proportionate penalties clause, which is to restore the offender to useful citizenship, and that is not happening here. I also just very briefly want to touch on the forfeiture argument from the state, which came from people versus Harris, that the record needs to be sufficiently developed. And here, in this case, the state itself even said that his mental illness was carefully considered, and there's, as I've talked about, there's a lot of information in the sentencing hearing. I would say the trial court did everything that the Illinois Supreme Court wants it to do in terms of developing that record, and so we can talk about it, and this court can rule on it because it's not a factual vacuum like in Harris. The court in Harris said that they only had basic information that was from the PSI. That is not the case here, so I believe it has not been forfeited. Thank you. Thank you. You'll have the opportunity to read that. Chris Shanahan, I think you probably picked up some of my concern with this. Tell me what you see as really what justice is served by locking this man up for 14 years for stealing socks out of an unlocked set-up bar. Well, first of all, let's start out with the fact that the defendant pled guilty to that, so we're not dealing with just whether he did it or not, which, by the way, is the dispensable thing about waters. No, there's no question. When he pled guilty, he knew. I mean, it's really clear in the transcript. He knew. Everybody knew. The trial court knew. The defendant knew. His attorney knew and the prosecutor knew that he had to serve at least six years in prison. That's when he pled guilty. Now, to more specifically answer your question, I'd like to direct the trial court's order on the motion to reconsider. He says, I considered the defendant's prior criminal history and sentences given. I commented at sentencing about the nature of the offense and his prior conviction. My primary focus was if rehabilitation should be a consideration. Many of the comments as to services available for guilty but mentally ill defendants go to this point. Then he goes on to say there have been numerous attempts at rehabilitation. I would note that Mr. Dowdy has been doing the same thing over and over and over again for almost 30 years. None of them worked. And that's really what it gets down to is that this man, the trial court can consider his prior crimes. This crime, he didn't enter a home. But his other crimes, he did enter homes. I mean, he entered the home of a 15-year-old girl. He was there at 2 o'clock in the morning when she comes out of her bedroom and there is the defendant. And he did steal socks from her house. I mean, talk about traumatizing an event. He followed a 9-year-old girl around and he had to get a restraining order to keep him away.  Though I believe the security provided by a prison may not be needed, a society has not been protected previously by lower sentences. I don't think he liked this sentence. I think in his perfect world, he would send him up to the prison discussed in the state's brief announcement, which is specifically for mentally ill. Because he recognizes that nothing will be served with respect to rehabilitating him elsewhere where he can't get treatment, right? I mean, all of his talk about things getting better, I mean, that's all so speculative. That doesn't really enter into it. I don't know that it's speculative when the state has cited three different prisons that perhaps are... But is he in any of those prisons? And that's, I mean, counsel says, well, that's immaterial because he wasn't sent to those prisons. Defendants get transferred around prisons all the time. And so certainly it could be done. The other thing I'd like to... And by the way, I wanted to, before I leave, the motion to consider the trial court's words. In other words, he has not shown an ability to be rehabilitated. Dr. Caneo did not say, oh, let's... If we just give him counseling and Prozac, he'll be fine. He said, if probation is available. Well, it wasn't. He said, if it was available, then we could do those things. Here's two problems with that. First of all, Prozac has to be one of the cheapest medications on the market. It can easily... I mean, that's pretty much what Caneo said he needed was Prozac. Now, because he pled guilty this time to guilty but mentally ill, and by the way, this is only the second time that he's ever done that. The last two were guilty but mentally ill. Never before had he been convicted. But even if you take an ordinary prisoner, when they're convicted under the guilty but mentally ill, they do have to provide something. And, wow, is Prozac an easy thing to provide? And I would note, he has had Prozac in the past in prison. Dr. Caneo's report conflicts with his testimony in certain times. He said he's never had any medication while he was in prison. Well, that's not true in his report. In his report, he says he was at Gateway and he was giving three drugs. One of them was Prozac. He violated the terms of his probation and he was sent to Graham where they continued him on the same medication, and that's 119. C-119. While at Gateway, he was prescribed the following psychotropic medications. Prozac, Depakote, and Trazodone. After he was kicked out of Gateway, Mr. Doughty was sent back to prison and was incarcerated at Graham Correctional Facility. There he continued the same psychotropic medications. Now, really what this comes down to was not, it had nothing to do with discretion. It has to do that there's no good answer from Mr. Doughty. He's been out. He will not. I mean, Dr. Conejo offered to see him for free. He never came one single time. Well, he also said that he needed a structured environment, which I take it to be something other than living with his mom. He actually said that the defendant doesn't. Dr. Conejo and the defendant's mother both said that he actually does well in prison because he's got a structured environment. Now, I'm not saying, oh, well, we're going to send all these people to prison because that gives them a structured environment. But nonetheless, they both did say that. And he does need structure. But if he's not, I mean, he's not insane. He cannot be. Nothing he's done would allow him to be involuntarily committed. And he won't, will not, will not do it himself. He will not. He has had, contrary again to Dr. Conejo's belief, he did have a medical card this last time. And yet, when he ran out of medicine. You're saying is he on SSI or Medicaid or what? It's not entirely clear. But at the sentencing hearing, on the ordinary part of it, in addition to corrections to the PSI and defense counsel said actually he did have a medical card. Okay. So that's, well, I guess my, he, when I asked you originally what, how justice could be served, it seems to me that the primary focus here is punishment rather than attempting to restore him to a useful citizen and provide rehabilitation. And that's what Dr. Conejo essentially focused on, that he would probably get worse rather than better. Again, that's kind of, I don't think when you look at his report and his testimony that he says, he says he'll reoffend. He doesn't, I don't think he said he would be worse. He said he will reoffend. But here's the thing. He had to get six years. And what other option is, I mean, he hasn't shown an ability to be rehabilitated. If he can't, if he won't take medicine, if he will not consistently go to a psychologist, if he will not stop reoffending, if he will not stay out of the homes of teenage girls. However, this last, the last charges were precipitated by somebody finding a sock in their backyard. No, Your Honor. They saw him in their backyard. Okay. That was, okay. Except that I thought that she didn't see him placing socks. She did. She did? Okay. She said she did. Yes. I thought she just presumed it was him. No, Your Honor. She described the man that she saw. She saw him. It wasn't just, oh, I found socks and they must be him. But we don't know if they're her socks. I mean, she didn't say that she had socks. Those were her socks, correct? I don't recall the exact depth of her testimony. Because she wasn't not charged with stealing her socks, so we know that the charge is related to him taking the socks out of the patrol car or whatever car that they had set up with the lingerie and socks, right? Essentially what happened was she saw him, and he's still on, on, for a few months. She sees him. He just lived in his neighborhood. She knows who he is. Right. They're trying to, I want you to consider how terrifying it would be to live in the neighborhood where this man lives and is entering homes of teenage girls and stealing socks. They're trying, they tried to prevent that by the way they handled his most recent arrest. But that doesn't, you can look at all those times when he did enter homes in considering whether the sentence was appropriate. Okay. Thank you, Ms. Shanahan, Mr. Cohen, for your, wait. Do you have the opportunity to read that? Yes. Sorry. Cut you off. Yes. I have a lot to get to, so I'm sorry if I go fast. But I want to start right off the bat by just disagreeing about the recent, Angela Hutchinson who found socks. It was never proven that it was Mr. Dowdy who did that. There was a case maybe 30 years ago in which someone saw him like in the yard. This was not that case. He was not seen. So I believe the record will show that it was never proven that he's leaving socks somewhere that precipitated this crime, just that the lady found socks. Second, I also want to say, you know, the state talked about numerous attempts at a rehab that it wouldn't work. However, throughout most of Mr. Dowdy's life, he never had the medication until recently, and that's part of Dr. Cuneo's report and testimony. So he never had the medication that he needed until the late 2000s. The state also talks about times when he didn't show up for his appointments with Dr. Cuneo. Some of these are from 1993 or from 20, 30 years ago. So in this case, he sought out counseling on his own the previous time he was released, not as a condition for probation, not because he was ordered to. He sought out counseling on his own. And so we could talk about that it hasn't worked yet, but to say that he doesn't have the motivation is just false because he sought it out on his own for the express purpose of he didn't want to do this again. And finally, talking about him doing better in prison, frankly, with all due respect, I think it might comfort the state to believe that prison could be good or at least not too harmful for Mr. Dowdy, and they spent a lot of time talking about that. But frankly, this is just not the reality. And this is quotes from the expert, Dr. Cuneo himself. I believe that no one could read his testimony and conclude that prison is anything less than harmful. And not just him, but the judge also said this, the trial court. So we seem to believe one out of two of them with how harmful prison is going to be for Mr. Dowdy, that it is not the appropriate place for him to get treated and that he's not getting the treatment he needs because it's a combination. Dr. Cuneo laid out three things, not one. He needs medication, structure, and the individual counseling. He's not getting those. So this is not a simple fix of give him POSAC, he'll be okay, or put him in a structure of a jail, he'll be okay. He needs all three of these things. Finally, I just want to point out, I just want to simplify this case for a second because the proportion of penalties clause, if these words ever mean something, it says all penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. So as far as restoring him to useful citizenship, we know that that's not going to happen in prison. This is an issue of impulse control. This is much like an addiction that he wants to stop this. He's expressed remorse every step of the way. He's sought counseling, and the only way he's going to be restored to useful citizenship is with help and with treatment if he gets out. But the second part of that is that penalties should be determined according to the seriousness of the offense. And if these words mean something, like what is the purpose of this proportion of penalties clause if it's not for a 14-year sentence for stealing socks out of an unlocked car? You know, it's hard to imagine many more petty offenses than that. This is not, there is no physical harm. There is no escalation of his crimes over time. And, you know, a lot of these cases that do reduce the sentence point to reservations that the trial court judge had. And here there's a ton of reservations that the trial court had in the sentence that he gave. Finally, the test of proportional penalties clause is whether the sentence shocks the moral sense of a community. And I can't think of what better test of that than the state's introduction in its brief when it said that the initial reaction of an average person, if you told them the sentence, would call it ridiculous. That's what the state said. This sentence is ridiculous and it is unconscionable. And most of all, it is disproportionate to say that he stole some socks and he was given 14 years. And so we could argue back and forth on any number of topics here, but I just want to simplify this case and say it's a 14-year sentence for stealing socks. And adding the fact that he's been remorseful, and it's really an issue of skinfulness control. This is not a hardened criminal who's trying to do this. He always has expressed guilt and shame. Even the detectives would say that about him. So prison is not serving him, and this is the time when some justice can be done in this case and Mr. Downey can get restored useful citizenship by getting out and being able to get that treatment. And his sentence needs to be reduced so that it is in proportion to the offense. Thank you, Your Honor. Thank you, Mr. Cohen. Thank you, Ms. Shanahan. And we'll take the matter under advisement when you're ready. That concludes.